WILLIAM T. CARSON, Appellant, *vs.* ISAAC W. CARSON *et al.* Appellees.

*Opinion filed December 17, 1912.*

1. GIFTS—*a mere promise to make a gift is not enforcible.* A promise by a father to give to his son the coal underlying the home farm, or in case of the sale of the coal, upon which an option had been given, to give him the proceeds, is a mere promise of a gift, which the father is at liberty to revoke.

2. TRUSTS—*what does not establish a trust in the home farm.* The fact that a father proposes to give the coal underlying his home farm to one son and the surface of the farm to the other, does not in any way make the latter responsible for the father's performance of his promise to the former; and if the father sells the coal and pays off the mortgage on the farm with part of the money and pays the remainder, only, of the proceeds of the coal to the son, the other son, upon receiving a conveyance of the farm, does not hold it as trustee for the other son's interest and is not liable to him for the money used to pay off the mortgage.

3. SAME—*when grantee must show that he had purchased his brother's interest in land.* Where a father has agreed to divide a twenty-acre tract equally between his two sons, but upon the representation of one that he had purchased the other's interest he conveys the whole twenty acres to him, the grantee has the burden of proving that he had made the purchase and was authorized to make the representation, or he must be held to hold title to half the land in trust for his brother.

VICKERS, J., dissenting.

APPEAL from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding.

B. G. WAGGONER, for appellant.

W. P. EARLY, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree dismissing for want of equity a bill in chancery filed by appellant to declare a trust, and for other relief. The bill prayed that Isaac W. Carson

be decreed to be a trustee for appellant and declared to hold title to ten acres of land described, in trust for appellant; also that it be decreed that said Isaac holds $3500 in trust for appellant, and that he be ordered to convey the ten acres of land to appellant and pay him said sum of money, and that the payment of the money be secured by decreeing it to be a lien on certain land owned by Isaac.

A brief statement of the material facts out of which the litigation arose is as follows: William Carson was the father of appellant and three other sons, Isaac W. Carson, John F. Carson and Alexander J. Carson, all of whom were made defendants but no relief was asked against any of them except Isaac. William Carson, the father, died intestate June 13, 1905, leaving no widow surviving him, and leaving the four sons above named, who were all adults, as his only children and heirs-at-law. He owned during his lifetime lands in Madison and Washington counties and resided on a farm in Madison county. Some years prior to 1903 he made a gift to the sons Alexander J. and John F. of a farm of one hundred and eighty acres in Washington county. December 28, 1903, all four of the sons were at their father's house. The father expressed a desire to place his sons Isaac and appellant upon an equality, so far as property was concerned, with his two sons to whom he had given the Washington county farm. He said he would give appellant and Isaac the home place, containing about one hundred and thirteen acres, and himself wrote the following paper to evidence what he intended:

"MADISON Co., ILLS., *Dec. 28, 1903.*

"Wm. Carson of said County gives to Wm. T. Carson of Okla. the Coal in place of his half of the 113½ acres of the of Sec (15) town Six Range 6 west of the 3 Principal meridian & Isaac W. Carson gets the land above named.

WM. T. CARSON, JR.
JOHN F. CARSON,
ISAAC W. CARSON,
ALEXANDER J. CARSON.

William T. Francy, John B. Carson, Witnesses."

This was signed by all four of the sons but not by the father. The reason given for having all four sons sign it was to signify that they were satisfied. Below the signatures of the four sons the father wrote:

"10 acres & South end of Section 12 in Madison Co Ills is to be Wm T Carsons
Also North end 10 for Isaac A. Carson
                    Acres."

This was not signed by anyone. It is not disputed that the intention of William Carson, though somewhat lamely expressed in the writing, was that Isaac should have the surface and appellant the coal under the surface of the home place or the proceeds of its sale, and that appellant should have the south ten acres and appellee Isaac Carson should have the north ten acres of a twenty-acre timber tract owned by William Carson. Prior to the time the writing was made, the father, William Carson, had given an option on the sale of the coal under the home place, which had not expired and was afterwards extended. No conveyance was made by the father to either of the two sons Isaac and appellant at the time, but the writing was delivered to a third party and by him left with a bank in Staunton, Illinois, for safe keeping. Appellant lived in Oklahoma, and returned there a few days after the meeting at his father's house in December, 1903. On May 4, 1904, William Carson made a conveyance to Isaac of the home place, reserving to himself the use and income from it during his life. No reservation was made of the coal, but subsequently the coal was taken and paid for by a coal company to whom the option had been assigned. The amount paid for the coal was $2040, and this sum was paid to William Carson, the father. February 20, 1905, William Carson executed a conveyance to Isaac for the whole of the twenty-acre tract.

The bill charges that when William Carson proposed to give the appellant and Isaac, in equal shares, the home

place, they, in the presence of their father and with his approval, agreed by parol to a partition, whereby appellant was to have the coal and minerals underneath the surface of the entire farm and Isaac was to have the surface. There was a mortgage for a little more than $1200 on the farm, and the bill alleges that it was a part of the agreement between appellant and his brother Isaac that Isaac was to pay the mortgage. Pursuant to this agreement it is alleged the paper above set out was written by the father. The bill alleges that Isaac proposed to his father and appellant that the father convey the title to the land to him, and promised appellant and his father he would hold in trust for appellant his interest therein. Appellant claims he is the equitable owner of the south ten acres of the twenty-acre tract and that the legal title is held in trust for him by Isaac; that appellant's interest in the home farm, which he alleges Isaac held in trust for him, having been conveyed to an innocent purchaser, Isaac should be required to account for the value of the interest claimed by appellant, and that it should be made a lien on the surface of the home farm.

Isaac Carson answered, specifically denying all the material allegations of the bill, and set up and relied on the Statute of Frauds and the five year Statute of Limitations. The cause was referred to the master to take the testimony and report his conclusions. The master found no trust was established by the proof as to any interest of appellant in the home farm; that Isaac Carson was indebted to appellant $150 on account of his interest in the twenty-acre tract, which should be made a lien on the land; that the mortgage on the home farm should have been paid by appellant and Isaac in equal portions, but as it was all paid out of the proceeds of the sale of the coal, appellant should be subrogated to the rights of the mortgagee, with interest, and a lien given appellant on the farm to secure its payment, "in case appropriate amendment of the bill of

complaint herein be made with leave of court." Both parties filed objections to the master's report, and upon being overruled they were renewed as exceptions before the chancellor, who overruled appellant's exceptions, sustained the exceptions of appellee Isaac Carson, and entered a decree dismissing the bill for want of equity.

When the coal company, in October, 1904, took the coal under the option given by William Carson, the money ($2040) was paid to him. The deed to the purchaser for the coal was signed by William and Isaac Carson in order to make the title clear but Isaac received no part of the consideration paid for the coal. William Carson paid off the mortgage on the farm, amounting to $1231.60, out of money received for the coal and sent appellant $537.50. This is all he has ever received from the proposed gift of his father of an interest in the two tracts of land.

Independent of any statute of frauds or limitations, there is a lack of legal proof to establish any trust relation between appellant and Isaac as to the home farm. The weight of the proof clearly shows that William Carson proposed to give appellant the coal and Isaac the surface, and that this proposition was satisfactory to the four sons. The proof does not sustain the allegation that the original proposition was to divide the land equally between them, and that they agreed to a partition by which appellant was to get the coal and Isaac the surface, though this is not a material matter. At the time the paper was written signifying the father's intention to give the coal to appellant and the surface to Isaac there was an unexpired option for the sale of the coal outstanding which the father had given, and this was known to all the parties and was talked of at the time. The paper gave the sons no present interest in the land, but it merely signified a promise and intention of the father to give one the coal and the other the surface at some future time. The proof shows that William Carson was to sell the coal and that

he promised to give the proceeds of its sale to appellant. Isaac never claimed any interest in the coal, but his conduct shows he recognized that his father had the right to sell it. There is no proof that Isaac requested or in any way influenced the conveyance from his father of the home farm at the time it was made or that he expressly promised to hold any interest in it in trust for appellant, and there is no proof from which any such promise or duty can be implied. The understanding and agreement were that when the coal was sold by William Carson he would give the proceeds to appellant, but Isaac in no way became responsible for his father's performance of the agreement. Neither was the agreement one that could have been enforced against his father by appellant. It was a mere promise of a gift, which the father was at liberty to revoke if he chose. *Hoig* v. *Adrian College,* 83 Ill. 267; *Beatty* v. *Western College,* 177 id. 280; *Barnum* v. *Read,* 136 id. 388; *Badgley* v. *Votrain,* 68 id. 25.

There is no basis in this record for holding that Isaac Carson became trustee for appellant of any interest in the home farm, either in the coal or in the proceeds of its sale. With respect to that land he neither expressly nor impliedly assumed any duty or trust relation toward appellant and cannot be held responsible for his father's failure to complete the gift he promised appellant. So far as the home place was concerned, we think the decree was right.

As to the twenty-acre tract of timber land referred to in the memorandum above set out, Isaac Carson testified that some time after the memorandum was made he corresponded with appellant about buying his interest; that appellant offered to take $15 per acre and that he (Isaac) raised the money to pay for it, but before he sent it to appellant his father borrowed it; that he told his father, when he loaned it to him, the money was to pay appellant for his ten acres of the twenty-acre tract, and requested

his father to send appellant the amount, $150, when he could spare it. The father, after making the memorandum referred to, spoke of and treated the ten acres as appellant's and clearly intended it for him. Before he made the deed to either of them for the twenty acres he wrote appellant that Isaac wanted to buy his ten acres, and if it was satisfactory to appellant he would make the deed to Isaac for the entire twenty acres. Upon the representations of Isaac to his father that he had bought appellant's ten acres the father made him a deed for the entire twenty. Appellant testified he never agreed to sell to his brother for $15 per acre; that he offered to take $20 per acre, and told his father it would be all right for him to make the deed for the twenty acres to Isaac provided he (appellant) received the $20 per acre, but that Isaac never signified to him that he would take it at that price. The appellant never authorized the payment of the money for it, if he sold it to his brother, to anyone other than himself. The situation, then, as to the twenty acres is, that William Carson intended to deed appellant one-half of it and Isaac the other half. Upon the representations of Isaac 'that he had bought appellant's half the father was induced to make Isaac a deed for the entire twenty acres. We do not think the proof shows there was ever any sale agreed to between the two brothers. Their testimony was directly conflicting, with nothing that we can see entitling one to greater credit than the other. With Isaac admitting he induced his father to convey to him land intended for and in equity belonging to the appellant, the burden was upon him to show he was authorized to make the representations and induce the making of the conveyance. He has not done so, and in our opinion took and holds the south ten acres of the twenty acres in trust for appellant, and the circuit court erred in not so decreeing.

The decree was right in so far as it denied the relief prayed as to the home farm, but the court erred in not

granting the relief prayed as to the ten acres. For this error the decree is reversed and the cause remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE VICKERS, dissenting.